UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

LOCAL UNION 97, INTERNATIONAL
BROTHERHOOD OF ELECTRICAL
WORKERS, AFL-CIO,

              Plaintiff,

              -v-                              5:23-CV-1294 (AJB/ML)

BROOKFIELD POWER NEW YORK
HYDRO SERVICES LLC; and ERIE
BOULEVARD HYDROPOWER LP,

              Defendants.

---

**Hon. Anthony Brindisi, U.S. District Judge:**

## OPINION & ORDER

**I.    INTRODUCTION**

On October 20, 2023, plaintiff Local Union 97, International Brotherhood of Electrical Workers, AFL-CIO ("Union" or "Local 97"), filed this action under 29 U.S.C. § 185(a) seeking to compel arbitration with Brookfield Power New York Hydro Services LLC ("BPNYHS") and Erie Boulevard Hydropower LP ("Erie") (collectively "defendants"). Dkt. No. 1. A little over a year later, on October 31, 2024, the Union moved to compel arbitration. Dkt. No. 44.

**II.    BACKGROUND**

The Union and defendants are parties to a collective bargaining agreement ("CBA"). Pl.'s Statement of Material Facts ("SOMF"), Dkt. No. 44-2 ¶ 6; Defs.' Resp. to SOMF, Dkt. No. 54-1 ¶ 6. The CBA contains a grievance and arbitration procedure to resolve disputes. *See* Dkt. No. 1-2 at 16–18. In relevant part, the CBA states, "Should the [Union] claim that a dispute or difference has arisen between the Company and the [Union] as to the meaning, application or

operation of any provision of this agreement, such dispute or difference shall be . . . settled in the following manner." *Id.* at 16.

Thereafter, the CBA outlines the path a grievance travels to reach arbitration. *See Loc. Union 97, Int'l Bhd. of Elec. Workers, AFL-CIO v. Niagara Mohawk Power Corp.*, 2021 WL 3771877, at *1 (N.D.N.Y. Aug. 25, 2021) (D'Agostino, J.). At step one, discussion "[b]etween the grievant, appropriate shop steward and/or [Union] representative and supervisor" will occur. Dkt. No. 1-2 at 16. If they fail to reach an agreement, the Union may request that the matter proceed to step two. *Id.* at 17. At step two, a meeting between "members of the Grievance Committee designated by [the] Union . . . and the Manager-Labor Relations or designee . . . will decide the matter and affix an answer within ten (10) working days." *Id.* "If resolution is not reached at Step 2, [the] Union . . . may request in writing that this matter be heard at Step 3." *Id.* At step three, a meeting will be held between the Union and "the Company's General Manager and/or designee(s)" to attempt to settle the dispute. *Id.* If a decision is still not reached, the Union may "give written notice of its intent to refer the dispute to arbitration[.]" *Id.*

On December 14, 2022, the Union filed a grievance, through steward Neil Clark, alleging that defendants violated provisions of Articles I, II, IV, XI, XVIII, and XXIII, "the Regional Operator job specification, and other applicable provisions of the [CBA], by assigning bargaining-unit work to non-bargaining unit personnel." Pl.'s Mot. to Compel Arbitration, Dkt. No. 44-1 at 7; *see* Grievance, Dkt. No. 1-3 at 2.

The Union asserts that "[t]he claimed bargaining-unit work in dispute involved the control, direction, and monitoring of Defendants' hydroelectric facilities and systems performed within the territory covered by Article II of the [CBA]." Dkt. No. 44-1 at 7; Dkt. No. 44-2 ¶ 11; *see also* Dkt. No. 1-3 at 2. It states that "[p]rior to 2008, bargaining-unit employees represented

by [the Union] exclusively performed this work; however, in or about 2008, the bargaining-unit work involving the control, direction, and monitoring of Defendants' hydroelectric facilities and systems was moved from New York to Massachusetts." Dkt. No. 44-1; Dkt. No. 44-2 ¶¶ 12–13. "Due to the fact that Article II, Section 1 of the [CBA] provides that the territory covered by the [CBA] is the franchise service territory of Defendants' predecessor, Niagara Mohawk Power Corporation, which includes large swaths of New York but not Massachusetts, the above-described work that was moved to Massachusetts was no longer covered by the Agreement." Dkt. No. 44-1 at 7.

The Union alleges, however, that in October 2022, "the work involving the control, direction, and monitoring of Defendants' hydroelectric facilities and systems (at which the 140 or so bargaining-unit employees represented by [the Union] work) was again being performed within the territory covered by Article II[,] but by non-bargaining unit personnel." Dkt. No. 44-1 at 7–8; Dkt. No. 44-2 ¶ 11.[1] The Union "questioned the Company about the assignment of that work to non-bargaining unit personnel and requested that it be assigned to bargaining-unit employees[,]" leading to the grievance here. Dkt. No. 44-1 at 8. After the Union filed the grievance, "the parties mutually agreed to move . . . directly to Step 3[.]" Dkt. No. 1-3 at 2; Dkt. No. 44-1 at 9; Dkt. No. 44-2 ¶ 18; Dkt. No. 54-1 ¶ 18.

The grievance was not resolved at that step. Rather, defendants issued a written answer stating: "The company does not agree that the System Control Operators are covered under the

---

[1] As with many of its responses to plaintiff's SOMF, defendants assert that this fact is "disputed," yet provides no factual basis as to why. *See, e.g.*, Defs.' Resp. to SOMF, Dkt. No. 54-1 ¶ 11 ("Plaintiff cites Paragraph 20 of Defendants' Answer in support of this fact. Paragraph 20 of the Answer does not admit this fact[.] Plaintiff's statement of fact is inconsistent with the grievance attached as Exhibit B to the Complaint[.] Plaintiff supports this fact with the affidavit testimony of Neil Clark, who has not been deposed or otherwise subject to cross examination on this matter."). "Under the rules, failure to admit or deny a factual statement is deemed an admission." *Perkins v. S. New England Tel. Co.*, 2011 WL 2173701, at *10 (D. Conn. June 1, 2011) (citing Fed. R. Civ. P. 56(e)(2)); *see* N.D.N.Y. Local Rule 56.1(b). Regardless, the veracity of plaintiff's assertion is not essential to the Court's disposition of the pending motion.

3

existing [CBA] and this grievance is therefore denied."[2] *See* Dkt. No. 1-3 at 4.  As a result, on April 11, 2023, the Union gave written notice to defendants of its intent to refer the dispute to arbitration.  Dkt. No. 44-2 ¶ 22; Dkt. No. 54-1 ¶ 22.  Defendants have since refused to arbitrate. *See* Dkt. No. 1-6 at 2.  The Union now seeks to compel arbitration of its grievance. *See* Dkt. No. 44.

### III. DISCUSSION

#### A. Additional Discovery

"[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute." *Daitz v. ATR New York LH, Inc.*, 2025 WL 2733346, at *4 (E.D.N.Y. Sept. 25, 2025) (quoting *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 179 (2d Cir. 2021)).  "The Court must apply 'ordinary principles of contract interpretation' to determine whether 'a particular dispute is covered by the [arbitration] language to which the parties agreed.'" *Daitz*, 2025 WL 2733346, at *4 (quoting *Loc. Union 97, Int'l Bhd. of Elec. Workers, AFL-CIO v. Niagara Mohawk Power Corp.*, 67 F.4th 107, 114 (2d Cir. 2023)).

Defendants ask that the motion be denied outright.  In their view, the Union "has failed to carry its burden of establishing the absence of a genuine issue of material fact as to arbitrability of the grievance."  Dkt. No. 48 at 11.

"Courts deciding motions to compel arbitration apply a standard similar to that applicable for a motion for summary judgment." *MARN, Inc. v. Aurora Mach., LLC*, 2025 WL 641293, at

---

[2] Erik Wright, the individual that authored the denial letter to plaintiff, identifies themselves in that letter as defendant BPNYHS' director of human resources.  *See* Grievance, Dkt. No. 1-3 at 4.  Coincidentally, defendants offer a declaration from non-party Brookfield Power Asset Management's ("BPAM") director of human resources— Erik Wright—who "*[i]n that role*, [has] personal knowledge regarding . . . the grievance presented by Local 97 in December 2022 (the 'Grievance')."  Dkt. No. 48-2 ¶¶ 1, 2 (emphasis added).  BPAM's HR director asserts that "[t]he Control Center employees at issue in the Grievance are employed by Brookfield Power Asset Management, a distinct entity that is not a party to the CBA" and that those workers "do not perform the nature of work handled by employees covered by the CBA."  *Id.* ¶¶ 3, 4.

4

*7 (D. Conn. Feb. 27, 2025) (quoting *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017)) (internal citations and alterations omitted). "Where the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [the Court] may rule on the basis of that legal issue and avoid the need for further court proceedings." *Smith v. RPA Energy, Inc.*, 732 F. Supp. 3d 278, 284 (S.D.N.Y. 2024) (quoting *Meyer*, 868 F.3d at 74). If there is "a genuine issue of fact as to the making of the agreement for arbitration, [however,] then a trial is necessary." *Azagrar v. Bank of Am. Corp.*, 2025 WL 2524445, at *3 (E.D.N.Y. July 30, 2025) (quoting *Smith*, 732 F. Supp. 3d at 284).

If the Court is unwilling to deny the motion outright, then defendants request that it reopen discovery pursuant to Federal Rule of Civil Procedure 56(d). *See* Dkt. No. 54 at 15–16. "Federal Rule of Civil Procedure 56(d) provides, '[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . defer considering the motion or deny it[;] allow time to obtain affidavits or declarations or to take discovery; or . . . issue any other appropriate order.'" *Owoyemi v. Credit Corp Sols. Inc.*, 677 F. Supp. 3d 285, 302 (S.D.N.Y. 2023) (quoting Fed. R. Civ. P. 56(d)). "A party resisting . . . judgment on the ground that it needs additional discovery . . . to defeat the motion must submit an affidavit pursuant to Federal Rule of Civil Procedure 56(d) . . . showing: '(1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts.'" *Elliott v. Cartagena*, 84 F.4th 481, 493 (2d Cir. 2023); *see Meloff v. N.Y. Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir. 1995).

The Court has reviewed defendants' Rule 56(d) affidavit. Dkt. No. 48-3 at 2–9. They contend that the requested discovery "is reasonably expected to create genuine issues of material

fact as to whether [the Union] has a good-faith basis to claim that this dispute arises under the terms of the CBA, whether the union knew prior to initiating this action that the employees in question were assigned by a different employer who was not party to the CBA, whether Defendants consented to arbitrate this specific dispute, and the ultimate issue of whether the grievance in question is arbitrable." Dkt. No. 48-3 at 5, ¶¶ 23, 26. Toward that end, defendants seek the following:

> Uncompleted discovery . . . includ[ing] whether [the Union] has a good faith basis for alleging that the underlying grievance and dispute 'arises under' the terms of the [CBA]. Specific facts Defendants will seek include, but are not limited to, whether the dispute involves the 'Company' as that term is defined in the CBA and the Complaint, the nature of the work in dispute, whether Plaintiff had previously acknowledged the control center employees were part of a different entity and serviced a different territory, and the basis for [the Union]'s claim that work in question is bargaining-unit work.

*Id.* ¶ 22.

As an initial matter, although defendants purport to list "[s]pecific facts [they] will seek," they also claim they "are not limited to" those facts. That averment is doubtful and irrelevant. Defendants' burden to state "what facts are sought" cannot be lessened by the caveats and generalities their affidavit is replete with. At this juncture, most of the facts defendants seek are undefined or impermissibly broad.

For example, defendants seek "specific facts" as to "whether the dispute involves the 'Company' [and] the nature of the work in dispute[.]" *Id.* As they acknowledge, "the Complaint collectively defines Defendants BPNHYS and Erie (and no other entities) as the 'Company.'" Defs.' Resp., Dkt. No. 48 at 12. Yet the substance of "the dispute" is unclear. The Union contends that defendants are assigning work within the geographic area defined in Article II—work properly belonging to the CBA's regional operator role—to non-bargaining unit personnel.

6

*See* Dkt. No. 1-3 at 2.  Beyond that, establishing anything else the underlying dispute involves is an exercise in frustration.  For its part, the Union gestures broadly at the CBA—invoking Articles I, II, IV, XI, XVIII, XXIII, the Regional Operator job specification, as well as "all other applicable articles[.]" Dkt. No. 1-3 at 2.  If that is meant to be illuminating, it is not.

Despite reviewing the parties' papers and independently examining the record, the Court is no closer to knowing what work the bargaining unit employees and non-bargaining unit personnel perform.  This much is certain: The Union says the duties are the same; defendants say they are not.  Still, neither party bothers to say what the duties actually are.  *Compare* Clark Decl., Dkt. No. 44-3 ¶ 11 ("[t]he claimed bargaining-unit work in dispute involve[s] the control, direction, and monitoring of Defendants' hydroelectric facilities and systems")*, with* Wright Decl., Dkt. No. 48-2 ¶ 4 ("[t]he Control Center employees do not perform the nature of work handled by employees covered by the CBA").

Thus, to paraphrase defendants' request: Defendants seek facts as to whether they themselves are involved in an unelaborated "dispute," and the "nature of the work . . . dispute[d]" in that "dispute."  That is insufficient to warrant reopening discovery.

The remainder of the facts sought that are articulated with a semblance of specificity are irrelevant.  Or, at least, defendants fail to explain their relevance.

Defendants seek discovery to find "whether [p]laintiff had previously acknowledged the control center employees were part of a different entity and serviced a different territory[.]" Dkt. No. 49-3 at 5, ¶¶ 22, 23.  The Union appears to acknowledge as much.  *See* Mot. to Compel, Dkt. No. 44-1 at 7 ("[I]n or about 2008, the bargaining-unit work involving the control, direction, and monitoring of Defendants' hydroelectric facilities and systems was moved from New York to Massachusetts.  [T]he above-described work that was moved to Massachusetts was no longer

covered by the Agreement."); Pl.'s Reply to Mot. to Compel, Dkt. No. 49 at 13 n.2 ("Local 97 intends to demonstrate at arbitration, including through documentation provided by Defendants themselves, that Defendants do in fact control the assignment of the disputed work and, in any event, are not legally distinct from their Brookfield affiliate[.]"). Assuming the Union has "previously acknowledged" that the non-union personnel "were part of a different entity and service a different territory," defendants fail to explain why that matters. If the intent is to suggest that such an acknowledgement would create a genuine issue of material fact as to plaintiff's "good faith," it would not. And, as the Court will elaborate on below, even if it created an issue of fact, that issue would not be material.

Further, defendants argue that "uncompleted discovery . . . exists because Plaintiff's motion . . . is supported by" the declaration of Neil Clark, the Union's business representative:

> [M]r. Clark represented that BPNYHS and Erie made assignments of bargaining unit work for control center employees (Clark Decl. ¶ 9), communications between Local 97, BPNYHS, and Erie regarding the reassignment of control center employees (*id.* at ¶ 15), the basis for the Union's disagreement with the Company's written statement that "[t]he Company does not agree that the System Control Operators are covered under the existing collective bargaining agreement…" (*id.* at ¶ 19), and the basis for the Union's disagreement with the Company's written statement that "the system operators are not covered under any existing collective bargaining agreement…" (*id.* at ¶ 20).

Dkt. No. 48-3 at 6, ¶¶ 24, 25.

Hence, defendants profess a need to depose Clark to "examine the representations he made under oath in [his declaration]." *Id.* ¶ 25; *see* Defs.' Sur-reply, Dkt. No. 54 at 6 ("Defendants seek to reopen discovery to depose Mr. Clark . . . to challenge the assertions made in his declaration[.]"). However, defendants mischaracterize the "representations" and "assertions" Clark has made. In their Rule 56(d) affidavit, defendants say Clark "represented" that defendants "made assignments of . . . work for control center employees[.]" Dkt. No. 48-3

at 6, ¶ 25 (citing Dkt. No. 44-3 ¶ 9). In fact, he testified only that "[o]n December 14, 2022, Local 97 presented a grievance to Defendants alleging that they violated . . . the [CBA], by assigning bargaining-unit work to non-bargaining unit personnel." Dkt. No. 44-3 ¶ 9. Clark did not make a representation about the grievance's validity or merit. He stated only that the Union presented its grievance on that date, containing those allegations. Defendants concede both of those statements are accurate. *See* Defs.' Resp. to SOMF ¶ 8.

Similarly, defendants assert that Clark "represented . . . communications between [the parties] regarding the reassignment of control center employees." Dkt. No. 48-3 at 6, ¶ 25 (citing Dkt. No. 44-3 ¶ 15). Really, Clark testified only that "[p]rior to presenting the grievance[,] Local 97 questioned Defendants about the assignment of . . . work to non-bargaining unit personnel and requested that it be assigned to bargaining-unit employees[.]" Dkt. No. 44-3 ¶ 15. Again, defendants do not dispute they were questioned at that time or that the Union made such a request. *See* Defs.' Resp. to SOMF, Dkt. No. 54-1 ¶ 15. This pattern holds ad nauseam. *See* Dkt. No. 43-3 ¶ 19 ("The [g]rievance was not resolved at Step 3 and Defendants issued a written answer"); *id.* ¶ 20 ("[O]n March 17, 2023, Defendants again denied the Grievance, reiterating their position[.]"); Defs.' Resp. to SOMF, Dkt. No. 54-1 ¶¶ 19, 20 ("Undisputed"). Notwithstanding their reimagining the testimony, defendants fail to say how the facts they seek from deposing Clark are reasonably expected to create any genuine issue of material fact.

Lastly, in their Rule 56(d) affidavit, defendants contend that "uncompleted discovery . . . exists because Plaintiff's Motion [to Compel] contained statements of fact unsupported by the record[:] Footnote 2 . . . includes no factual citations and Defendants seek . . . discovery regarding the basis of those factual allegations." Dkt. No. 48-3 at 6 ¶ 27. This request is wildly insufficient. It warrants no additional consideration.

In sum, defendants' Rule 56(d) affidavit does not meet at least two of the requirements of *Meloff*.[3] It does not sufficiently identify what facts defendants seek. Regardless, even if it were clear which facts defendants sought in discovery, and even if those facts did create issues regarding how much the Union knew prior to this suit or the sincerity behind the grievance, it would make no difference. These issues, and the others that defendants discuss, are immaterial.

### B. Arbitration Clause

The Second Circuit has recently "analyzed [nearly] identical arbitration clauses" contained in agreements that the Union has with other employers. Dkt. No. 44-1 at 13; *see Loc. Union 97, Int'l Bhd. of Elec. Workers, AFL-CIO v. Niagara Mohawk Power Corp.*, 67 F.4th 107 (2d Cir. 2023); *Loc. Union 97, Int'l Bhd. of Elec. Workers, AFL-CIO v. NRG Energy, Inc.*, 53 F.4th 42, 47 (2d Cir. 2022).

In *NRG Energy*, the Second Circuit considered the following arbitration clause: "Should Local Union 97 claim that a dispute or difference has arisen between NRG and Local Union 97 Union as to the meaning, application or operation of any provision of this agreement, such dispute or difference shall be presented within thirty (30) working days and settled in the following manner, and there shall be no quitting or suspension of work during or on account of such dispute or difference." 53 F.4th at 47 (internal alterations omitted). The panel noted that "[n]umerous district courts" in the Second Circuit "have interpreted similar clauses as being broad." *Id.* at 52 (collecting cases). NRG argued that the arbitration clause did not "cover the dispute over the CBA's Life Insurance Provision because retirees [were] not 'employees' under

---

[3] "The Second Circuit has stated that a party seeking additional discovery under Rule 56(d) must file an affidavit describing: '(1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts.'" *Kleinknecht v. Ritter*, 2024 WL 896999, at *3 (E.D.N.Y. Mar. 1, 2024) (quoting *Meloff*, 51 F.3d at 375).

the CBA." *Id.*  However, the panel found that "the language of the arbitration clause permit[ted] Local Union 97 to arbitrate whenever the union *merely claim[ed]* there [was] a dispute or difference over any provision of the CBA." *Id.*  NRG's argument went "to the merits of the dispute and concern[ed] the interpretation of the CBA itself." *Id.*  But whether the Union's claim for relief was meritorious was irrelevant, all that mattered was whether it claimed a dispute had arisen between the parties relating to a provision of the CBA. *Id.*  The Union had clearly claimed there was a dispute over the meaning of the CBA as it applied to retiree life insurance benefits. *Id.*  "[T]hat [was] enough, under the broad arbitration clause, to invoke the presumption of arbitrability." *Id.*

The following year, in *Niagara Mohawk*, the Second Circuit considered a similar arbitration clause in a CBA between the Union and National Grid: "Should [the Union] claim that a dispute or difference has arisen between the Company and [the Union] as to the meaning, application or operation of any provision of this Agreement, such dispute or difference shall be presented within thirty (30) working days of when the event or action upon which the grievance is based became known, or should have been known by the grievant, and settled in the following manner."  67 F.4th at 110–11.  Interpreting the CBA, the *Niagara Mohawk* panel found it "clear that the parties intended to arbitrate th[e] dispute."  *Id.* at 118.  "When it negotiated the Agreement, the Union bargained . . . for a grievance procedure that included, where necessary, access to arbitration."  *Id.*  The *Niagara Mohawk* panel further highlighted, albeit in a footnote, that the Second Circuit "in *NRG Energy*, interpreting a substantially similar provision, aptly observed that 'the language of the arbitration clause permits Local Union 97 to arbitrate whenever the union *merely claims* there is a dispute or difference over any provision of the

[agreement].'" *Niagara Mohawk Power Corp.*, 67 F.4th at 116 n.5 (emphasis in original) (quoting *NRG Energy, Inc.*, 53 F.4th at 52).

Here, the CBA contains the same operative language, "Should the [Union] claim that a dispute or difference has arisen between the Company and the [Union] as to the meaning, application or operation of any provision of this agreement, such dispute or difference shall . . . [be] settled in the following manner." Dkt. No. 1-2 at 16. The Union claims a dispute has arisen under the CBA. That is enough for the Court to compel arbitration.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that

1. Plaintiff's motion to compel arbitration (Dkt. No. 44) is **GRANTED**.

The Clerk of the Court is directed to terminate all pending motions and close the case.

Dated: February 17, 2026

Utica, New York

Anthony J. Brindisi
U.S. District Judge

12